**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                               :
LOCAL 1478-2 INTERNATIONAL      :
LONGSHOREMEN'S ASSOCIATION,  :
                                               :
             Plaintiff,           :
                                               :    Civ. A. No.  07-1952 (SRC)
v.                                         :
                                             :    **OPINION**
TOYOTA LOGISTIC SERVICES, INC.,  :
                                             :
             Defendant.      :
_____:

**Chesler, U.S.D.J.**

      This matter comes before the Court on the motion of Defendant, Toyota Logistic Services, Inc. ("Toyota") [docket item 4], requesting the Court vacate, in part, the arbitration award issued on December 30, 2006, and the cross-motion to confirm the arbitration award filed by Plaintiff, Local 1478-2 International Longshoremen's Association ("Union"). [Docket item 8]. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and § 1337, and the motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Toyota's motion to vacate the arbitration award in part is denied, and the Union's cross-motion to enforce the arbitration award is granted.

**I. Background**

Toyota and the Union were parties to a Collective Bargaining Agreement ("CBA"), which was in effect from September 1, 2002, through August 31, 2007. (Iannaccone Cert., Ex. A). The Grievant, Yamile Bardellini ("Grievant") was employed by Toyota at its Vehicle Delivery Center in Port Newark, New Jersey, and was a member of the Union. The Union served as the exclusive bargaining agent for all of the employees at the facility, other than those who were employed in administrative, clerical and security positions.

At the time of the event that gave rise to this matter, Grievant was employed as a Shuttle Driver in the Yard Department at the Toyota Vehicle Delivery Center. The Toyota Vehicle Delivery Center is the location to which Toyota'a vehicles are shipped and stored prior to delivery to retailers. Pursuant to the CBA, Yard Department classified positions, including Shuttle Driver and Driver, are not posted. Rather, they are assigned at the sole discretion of Toyota.

Shuttle Drivers in the Yard Department are responsible for transporting Drivers between the shop, where the vehicles are loaded with upgrades, and the parking lot, where they are stored. Drivers are responsible for transporting vehicles from the shop to the parking lot. After a Driver delivers a vehicle to the parking lot, a Shuttle Driver transports the Driver back to the shop to transport another vehicle. Additionally, commercial car carriers, who are employed by third-party trucking companies, regularly accessed the parking lot in order to retrieve Toyota's vehicles for transport to retail establishments.

In April 2006, Toyota received a complaint that Shuttle Drivers were watching portable televisions while operating shuttle vehicles. Toyota also received reports from third-party truck

drivers that Toyota's Shuttle Drivers were operating their vehicles carelessly and endangering the safety of others, and that a glare had been noticed in the windshield of a shuttle vehicle that appeared to be from portable television.

In response to these complaints, Toyota inspected all of the shuttle vehicles during Grievant's shift on April 26, 2006. In the course of the investigation, Toyota discovered a portable television in Grievant's shuttle. The television was located in the center consol, plugged into the 12-volt outlet in Grievant's vehicle and covered with a denim jacket. As a result of this discovery, Toyota suspended Grievant for three days without pay and reassigned her to the position of Driver, a position that pays $.50 per hour less than she had earned as a Shuttle Driver. On May 1, 2006, the Union filed a grievance concerning the disciplinary action, which Toyota denied.

On May 12, 2006, pursuant to the terms of the CBA, the Union submitted the matter to the New Jersey State Board of Mediation for binding arbitration. (Nutley Cert., Ex. A). The Union's letter submitting the matter to arbitration, which was forwarded to Toyota's counsel, indicated the dispute regarded "the suspension and transfer of Yamile Bardellini." (*Id.*) Toyota did not submit written objection to the Union's characterization of the grievance. On July 13, 2006, after the grievance has been filed in this matter, but before the parties appeared for the arbitration proceeding, Toyota issued Grievant a written warning and a one day suspension after she was involved in an accident at work. Toyota reports that the warning and suspension were issued because this was Grievant's second accident causing damage to vehicles in a twelve month period.

On October 2, 2006, the parties appeared for the arbitration hearing before Arbitrator

Joseph Licata. The issues before the arbitrator, as agreed to by the parties, were: (1) Is the grievance arbitrable with respect to the transfer of assignment? (2) Did Toyota violate the CBA by reassigning the grievant from Shuttle Driver to Driver in the Yard Department? If so, what shall be the remedy? (3) Did Toyota have just cause to suspend the Grievant for three days without pay? If not, what shall be the remedy?

At the hearing, the Union argued that Grievant did not own the television located in the shuttle vehicle, she did not place the television in the shuttle vehicle, and was not aware that the television was in the shuttle vehicle on the night it was located and confiscated by Toyota. The Union also argued that Toyota did not have just cause to warrant the three day suspension or to reassign her to another position. In support of its position, the Union presented Myriam Gonzalez as a witness. Gonzalez was a Driver at the Toyota Vehicle Delivery Center, and Grievant had been assigned to transport her on the night the television was found in the shuttle vehicle. Gonzalez testified that she owned the television that was confiscated from Grievant's shuttle vehicle, that she placed it in the vehicle and intended to watch it in the vehicle during her breaks. (Iannaccone Cert., Ex. B at 11-12). It was also reported that although Gonzalez admitted to management that she owned the television, Toyota did not impose any discipline on her for its presence in the vehicle. (*Id.* at 12-13, 25).

In response, Toyota argued that Grievant was suspended for cause, because she had maintained a portable television in her vehicle; Grievant waived the issue of reassignment because she had failed to raise it in her written grievance; and the reassignment of Grievant was not arbitrable under the CBA, which provides that intra-departmental positions are not posted and that management has freedom to assign duties within the Yard Department. Toyota

-4-

identified several provisions of the CBA and Toyota's Work Rules in support of its argument and presented a witness who testified that, on one occasion, he had observed a television playing in Grievant's shuttle vehicle while she was operating the vehicle.

On December 30, 2006, the arbitrator sustained in part, and denied in part the Union's grievance and issued an opinion and award finding: (1) Grievant raised her reassignment during the internal grievance proceeding and therefore she did not waive the issue of reassignment, (Iannaccone Cert., Ex. B at 19-21); (2) the reassignment of Grievant constituted a disciplinary action and therefore is arbitrable under the CBA, (*id*. at 21-22); and (3) Toyota had just cause to discipline Grievant. (*Id*. at 23-25). The arbitrator also found that transferring Grievant to another position and the three day suspension were not appropriate remedies. (*Id*. at 25-26).

The arbitrator found that Toyota met its burden of proof with respect to the work rule violations committed by Grievant. However, because Toyota had imposed no discipline upon Myriam Gonzalez, the Driver Grievant had been assigned to transport, and who admitted ownership of the television, the arbitrator found the discrepancy constituted disparate treatment warranting modification of the disciplinary penalties imposed on Grievant. (*Id*. at 25-26). The arbitrator therefore reduced Grievant's penalty from a three day suspension without pay and the loss of her Shuttle Driver position to a one day suspension without pay. (*Id*. at 26). The arbitrator ordered Toyota to remit two days of pay to Grievant, to reinstate her position as Shuttle Driver retroactive to April 27, 2006, to provide Grievant back pay for the Shuttle Driver stipend, and to adjust Grievant's personnel record in accordance with the award. The arbitrator did not make a determination regarding the propriety of Toyota's claim that it would have subsequently removed the Shuttle Driver position and stipend from the Grievant based on her July 13, 2006

accident. (*Id.* at 27, n.4).

In accordance with the award, on January 1, 2007, Toyota paid Grievant two days' pay to reflect the reduced suspension. (Iannaccone Cert., Ex. C). On March 20, 2007, the Union, on behalf of Grievant, filed a complaint in the New Jersey Superior Court, Chancery Division, seeking to confirm the award based on Toyota's failure to reinstate Grievant to the position of Shuttle Driver and provide Grievant with back pay reflecting the differential paid to Shuttle Drivers. (Nutley Cert., Ex. C). On April 25, 2007, Toyota removed the action to this Court and on May 17, 2007, filed its answer and counterclaim, as well as this motion to vacate the arbitration award.

## II. Legal Discussion

In its motion to vacate the award, Toyota argues the arbitrator exceeded his authority under the CBA and the parties' submissions, because: (A) the reassignment of Grievant to another position within the Yard Department is not arbitrable; (B) the arbitrator improperly considered disparate treatment because the Union never raised the issue; and (c) the order to reinstate Grievant's position is irrational and inconsistent with the arbitrator's findings that Grievant operated her shuttle vehicle with a television within her view, that Grievant intended to do so again on the night it was confiscated, and that Shuttle Drivers should be held to a higher standard than the Drivers. Toyota also argues the order to reinstate Grievant to the position of Shuttle Driver violates New Jersey's public policy interest in the safe operation of motor vehicles. The Union has opposed these arguments and filed a cross-motion to confirm the arbitration award.

**A. Standard of Review**

It is well settled that a court's standard of review of a labor arbitration award is narrow. *See e.g. United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Indeed, courts generally "must enforce an arbitration award if it was based on an 'arguable' interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects a 'manifest disregard of the agreement, totally unsupported by principles of contract construction[.]' " *Id.* (citing *News Am. Publ's, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir.1990)). Indeed, the Federal Arbitration Act "mandates that federal courts not review substantive decisions of arbitrators," and strictly limits review of arbitration decisions to, among other things, fraud, impartiality, or lack of jurisdiction. *Gov't of Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172, 176 (3d Cir.1999) (citing 9 U.S.C. § 10 (a)).

The Court therefore does not review for legal error, but is "instead limited to assessing whether the award 'draw[s] its essence from the collective bargaining agreement.'" *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996) (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)). The "essence" standard is liberal and is satisfied if the award can "in any rational way be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention[.]" *Id.* (citations omitted). Accordingly, the Court must determine whether the arbitrator manifestly disregarded the terms of the agreement in making the arbitration award.

**B. Whether the reassignment of Grievant is arbitrable**

Toyota first argues the arbitrator did not have the authority to review the decision to reassign Grievant to the position of Driver because Toyota had complete discretion to reassign grievant to a position within the same department. (Df. Br. at 6). Toyota explains that, unlike other positions, it is not required to post positions which are filled through intradepartmental transfers, such as from Shuttle Driver to Driver, which are both within the Yard Department. Toyota relies on Articles IV and XVIII of the CBA, which provide respectively that the "Employer shall have the freedom in . . . .the assignment of work to specific employees," and that "[p]rior to hiring or transferring, the Employer shall post all job openings . . . . [however,] [i]ntra-departmental assignments shall not be subject to such posting procedure." (Iannaccone Cert., Ex. A at 3, 16). Importantly, Toyota does not challenge the arbitrator's authority to determine arbitrability, but rather merely argues that the arbitrator's decision regarding the arbitrability is incorrect.

An arbitrator derives her or his authority from the terms of the CBA and the scope of the issues submitted by the parties. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir.2004). Because arbitration is a matter of contract, "'a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Arbitration is, above all, a matter of contract and courts must respect the parties' bargained-for method of dispute resolution." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3rd Cir. 1998). In determining whether the parties agreed to submit a particular grievance to arbitration, a

court must apply ordinary state-law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).

However, in the absence of clear and unmistakable evidence that the parties agreed to submit the arbitrability question itself to arbitration, the court determines whether a given dispute is arbitrable. *First Options of Chicago*, 514 U.S. at 944; *AT&T Techs.*, 475 U.S. at 649; *Painewebber, Inc. v. Hofmann*, 984 F.2d 1372 (3d Cir. 1993). Ordinarily, there is a strong federal policy favoring arbitration agreements. *John Hancock*, 151 F.3d at 137. Therefore, "where the contract contains an arbitration clause, there is a presumption of arbitrability" unless there is "express exclusion or other forceful evidence" that the disputed grievance is not subject to arbitration. *AT&T Techs.*, 475 U.S. at 650, 652. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In this case, the parties expressly submitted the issue of arbitrability to the arbitrator. The first question the parties presented was whether "the grievance is arbitrable with respect to the transfer of assignment." As noted above, Toyota does not challenge the arbitrator's authority to determine the arbitrability of the issue, rather Toyota argues the arbitrator exceeded his authority in deciding the substance of the issue – specifically, that the arbitrator did not have the authority to review the decision to reassign Grievant to the position of Driver. As Toyota has not challenged the arbitrator's authority to determine the arbitrability of the issue, that issue is not before the Court. As such, the arbitrator's decision regarding arbitrability is subject to limited review by this Court, as discussed above. *See Gov't of Virgin Islands*, 169 F.3d at 176.

In finding that the reassignment was arbitrable, the arbitrator considered the provisions of

the CBA and the disciplinary letter issued to the Grievant, which stated that "*[a]s a result*" of Grievant's actions, Toyota suspended her from work for three days without pay and indicated that Grievant would "no longer have the position *and pay* of Shuttle Driver, effective immediately."  (Nutley Cert., Ex. B) (emphasis added).  The arbitrator concluded that the language in the memo indicated the reassignment was disciplinary in nature and therefore, subject to the arbitration provision of the CBA.  (Iannaccone Cert., Ex. B at 22).

Because Toyota explicitly indicated the change in Grievant's position and associated reduction in pay resulted from her action and the CBA provides for arbitration related to disputes arising from disciplinary actions, the arbitrator's finding that the change in position constituted a disciplinary action and was therefore subject to arbitration is clearly an arguable interpretation of the CBA.  Accordingly, the arbitrators finding cannot be disturbed.  *See Exxon Shipping Co.*, 73 F.3d at 1295.

**C. Wether the arbitrator exceeded his authority in considering disparate treatment**

Toyota next asserts that the Union did not argue, at arbitration or in its post-arbitration brief,  that the discipline imposed against Grievant was disparate.  Therefore, Toyota argues, because the parties did not present the issue to arbitration, the arbitrator exceeded his authority when he considered the issue, and that Toyota was denied opportunity to explore the issue at the hearing or in its post-arbitration brief.

The Union, however, contends the arbitrator properly considered the issue because the parties asked the arbitrator to determine whether the three day suspension and demotion violated the CBA, and if so, asked the arbitrator to determine the appropriate remedy.  The Union further

argues the arbitrator properly considered the issue because Gonzalez testified at the arbitration hearing that she owned the television, that she had confessed her ownership to management both orally and in writing, she presented a receipt evidencing her purchase of the television, and despite this, Toyota did not discipline her for the incident.

     As noted above, an arbitrator derives her or his authority from the terms of the CBA and the scope of the issues submitted by the parties. *Major League Umpires Ass'n*, 357 F.3d at 279. "It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission, but it is within the courts' province to review an arbitrator's interpretation." *Matteson v. Ryder System Inc.*, 99 F.3d 108, 113 (3d Cir. 1996). Although "'the courts are neither entitled nor encouraged simply to "rubber stamp" the interpretations and decisions of arbitrators,'" *Metromedia Energy, Inc. v. Enserch Energy Services, Inc.*, 409 F.3d 574, 579 (3d Cir. 2005) (quoting *Matteson*, 99 F.3d at 113), a court's review of the arbitrator's interpretation of the submissions is nevertheless "highly deferential." *Matteson*, 99 F.3d at 113. Indeed, an arbitrator's interpretation of the issues is entitled to the same deference as an arbitrator's interpretation of a CBA and cannot be overruled if there is any support at all for the arbitrator's interpretation. *Id.*; *see also Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 302 (3d Cir.1982) (explaining that "the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted").

Toyota's reliance on *Matteson v. Ryder System Inc.*, 99 F.3d 108, in support of its argument that the arbitrator exceeded his authority in considering disparate treatment, is not persuasive. As Toyota notes in its brief, the parties in *Matteson* did not present a formal list of

issues to the arbitrator. Additionally, the *Matteson* court addressed a dispute related to compensation, for which there were two distinct issues – percentage of gross revenue paid to drivers as well as reimbursement for tolls paid by the drivers. Unlike *Matteson*, in this case the parties provided a formal list of questions to the arbitrator, which specifically asked the arbitrator to determine if the reassignment violated the CBA and if Toyota had just cause to suspend Grievant for three days without pay. The parties further asked the arbitrator to craft an appropriate remedy if he found the previously imposed penalties unreasonable.

      The CBA between the parties in this case provides that "[a]ll claims of unjustifiable . . . disciplinary action" are subject to arbitration. (Iannaccone Cert., Ex. A at 11). The CBA does not define the term "unjustifiable." At the arbitration hearing, the Union challenged the justification of the disciplinary action taken against Grievant. As part of its argument, the Union presented Gonzalez's confession that she owned and was responsible for the television found in the shuttle, and despite her repeated efforts to take responsibility, Toyota nevertheless only disciplined Grievant. (*Id.* at 12-13, 25-26). Based on this evidence, the arbitrator determined that Toyota's decision not to discipline Gonzalez at all, while suspending Grievant for three days and demoting her to a lower-paying position, constituted disparate treatment and therefore found the disciplinary actions unjust.

      The Court finds no evidence that arbitrator manifestly disregarded the terms of the agreement or exceeded the scope of the issues presented by the parties in making the arbitration award. The Union challenged the justification for the disciplinary action taken against Grievant, and the parties asked the arbitrator to determine the appropriate remedy based upon the facts presented, which included evidence of another responsible party who was not subject to

discipline. Although the Union did not explicitly ask the arbitrator to find the disparate treatment unjustified in violation of the CBA, the arbitrator's interpretation of the issue presented in light of the evidence presented at the hearing is not unreasonable. In short, because the arbitrator's interpretation is not completely lacking in support or reason, the Court will not upset it. Furthermore, although Toyota argues that it did not have opportunity to address the disparate treatment issue, the Court notes that it had opportunity to refute the evidence presented by Gonzalez at the hearing and in its post-arbitration brief.

### D.  Whether the award us irrational

Toyota next argues the arbitrator's award – ordering Toyota to reinstate Grievant's position as Shuttle Driver – is "wholly inconsistent" with the his finding that she watched television while operating her vehicle and that she intended to do so on the night the television was confiscated. The Union disagrees.

As recognized by both parties, the Court must affirm the arbitrator's award so long as the finding demonstrates at least "minimal rationality" in relation to the permissible sources of law. *Virgin Islands Nursing Assocs. Bargaining Unit v. Schneider*, 668 F.2d 221, 223 (3d Cir. 1981). "It is irrelevant whether the courts agree with the arbitrator's application and interpretation of the agreement." *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982). Courts are "not to substitute their judgment for that of the arbitrator." *Id*. "Therefore, as long as the arbitrator's award is drawn from the essence of the collective bargaining agreement, a court may not vacate it even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law." *Stroehmann Bakeries, Inc. v. Local 776*, 969 F.2d 1436, 1441 (3d

Cir. 1992).

Here, based upon his interpretation of the term as used in the CBA, the arbitrator first found that the reassignment of Grievant from Shuttle Driver to Driver constituted a "disciplinary action." (Iannaccone Cert., Ex. B at 22). The arbitrator then turned to the basis for the disciplinary action and concluded that "the portable television was intended to be used on April 26, 2006 during shuttle van operations – at least by Myriam Gonzalez, who was not driving." (*Id*. at 24). Although the arbitrator found that Grievant should have been subject to disciplinary action, and as the "Captain of the Ship," subject to greater consequence than Gonzalez, he nevertheless found the disciplinary action taken against Grievant, where Toyota subjected Gonzalez to no discipline, constituted disparate treatment. (*Id*. at 25-26). Therefore, the arbitrator reduced the suspension to one day without pay and ordered Grievant be reinstated to her position as Shuttle Driver. (*Id.* at 26).

Based on the questions and facts presented to the arbitrator, the award is not irrational. The order reinstating Grievant to the Shuttle Driver position, as opposed to Driver, is not, as Toyota argues, "wholly inconsistent" with the finding that "the portable television was intended to be used on April 26, 2006 during shuttle van operations – at least by Myriam Gonzalez, who was not driving." The arbitrator did not find that Grievant was repeatedly or habitually unsafe, nor did he find that Grievant would continue such behavior in the future. The Court also notes that the arbitrator ordered Grievant be transferred from one driving job to another, and presumably, she would drive either vehicle in the same manner. Accordingly, the Court cannot disturb the award on this basis.

**E. Whether the award violated public policy**

Finally, Toyota argues the arbitrator's award reinstating Grievant to the position of Shuttle Driver, after finding that she intended to operate the vehicle with a portable television, contravenes New Jersey's public policy interest in the safe operation of motor vehicles.

To vacate an award for violation of public policy, the "public policy must be 'explicit,' 'well defined,' and 'dominant.'" *Eastern Assoc'd Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)). The public policy must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *W.R. Grace & Co.*, 461 U.S. at 766 and *Muschany v. United States*, 324 U.S. 49, 66 (1945)). Moreover, to vacate the award, the moving party must also prove that enforcement of the award would, in fact, violate the public policy. *United Paperworkers*, 484 U.S. at 43. Accordingly, the question before the Court is not whether Grievant's operation of a shuttle vehicle violates public policy, but whether the award reinstating her to that position does so.

In support of it's argument, Toyota cites N.J.S.A. 39:3A-1, which prohibits operation of a motor vehicle in which a television screen is visible to the driver. Toyota also relies on several cases which stand for the proposition that reinstatement to a position operating motor vehicles by persons who had tested positive for alcohol or drugs violates public policy. The Court finds these cases distinct from this matter and unpersuasive.

The Court finds guidance in *United Paperworkers,* 461 U.S. 757. The *United Paperworkers* Court explained that although a policy against operating machinery while under the influence "is firmly rooted in common sense," "a formulation of public policy based only on

-15-

'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement." *United Paperworkers*, 484 U.S. at 44 (quoting *W.R. Grace & Co.*, 461 U.S. at 766). Likewise, in this case, although a policy against operating a motor vehicle while watching television may be rooted in common sense, a single law that prohibits such activity simply does establish an "explicit," "well defined," and "dominant" public policy that would permit this Court to set aside the arbitration award, which was entered in accordance with a valid collective-bargaining agreement.

However, even assuming Toyota's formulation of public policy is to be accepted, no violation of such a policy was clearly shown in this case. Indeed, the arbitrator concluded that "the portable television was to be used on April 26, 2006 during shuttle van operations – at least by Myriam Gonzalez, who was not driving."[1] (Iannaccone Cert., Ex. B at 24). The arbitrator did not find that Grievant watched television while driving. Such a finding now would require an act of fact finding that is beyond the province of this Court upon review of an arbitration award. *See United Paperworkers*, 484 U.S. at 44-45 (explaining that it is it is inappropriate for a court infer that a violation of a policy occurred where such a violation is not clearly shown in the arbitrator's decision).

The Court therefore finds that the arbitration award does not violate public policy, and as such, denies Toyota's motion to vacate the award on that basis.

---

[1] The arbitrator also gave "credit to the general testimony . . . that the portable television was activated, on one occasion, during shuttle van operations, and that it was placed somewhere between the Grievant and Ms. Gonzalez[.]" (Iannaccone Cert., Ex. B at 23). However, the arbitrator excluded this finding from consideration because Toyota failed to specify a date for this incident, or to include it in the as a basis for the April 27, 2006 disciplinary action. *Id*.

### III.  Conclusion

For the reasons set forth above, the Court **DENIES** Toyota's motion to vacate the arbitration award [docket item 4], and **GRANTS** the Union's motion to confirm the arbitration award [docket item 8].  An appropriate form of order will be filed.

                                                                   s/ Stanley R. Chesler
                                                                  Stanley R. Chesler, U.S.D.J.

Dated: January 11, 2008